# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

12-2821
CRIMINAL
_____

## UNITED STATES OF AMERICA,
Appellee,

v.

## JAMES LAVON MILLER,
Appellant.
_____

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE*
*SOUTHERN DISTRICT OF IOWA*
*HONORABLE JOHN A. JARVEY, JUDGE*
_____

## BRIEF OF APPELLEE
_____

**Nicholas A. Klinefeldt**
*United States Attorney*

**John D. Keller**
*Assistant United States Attorney*

U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432

Attorneys for Appellee

## SUMMARY OF THE CASE

James Lavon Miller appeals his convictions for four counts of making false claims against the United States. Miller argues that the government's evidence failed to show that he knew that his tax returns contained falsehoods. He insists that he genuinely believed in the accuracy of the millions of dollars of tax refunds claimed in his returns. Miller also argues that his knowing and voluntary waiver of counsel was vitiated by his trial failures and he contends that the court should have *sua sponte* revisited the *Faretta* inquiry during his closing argument.

Miller's mental state was proven by the outlandish nature of his tax returns, his inconsistent methods for calculating his interest income, his fabrication of the tax withholdings listed in his returns, his history of tax defiance, and his admission to a cell mate that he was guilty; the evidence was ample. As to Miller's waiver of counsel, he unequivocally persisted in his desire to proceed pro se after twice being advised of the dangers inherent in self-representation. Any missteps in presenting his defense cast no doubt on the validity of his waiver.

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not believe oral argument is necessary. If the Court grants oral argument, the United States suggests ten minutes per side would be sufficient.

Appellate Case: 12-2821     Page: 2     Date Filed: 11/16/2012 Entry ID: 3975549

# TABLE OF CONTENTS

SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

**I.** **In order to violate 18 U.S.C. § 287 a defendant must make a claim against the government knowing that the claim is false. After years of filing no tax returns, Miller filed five preposterous returns claiming millions of dollars in refunds. He substituted credit limits and deposits for interest income, and he fabricated amounts of tax withholding to maximize his refunds. Was the evidence sufficient to prove that Miller knew that his claims were false?** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

    A.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    B.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Appellate Case: 12-2821     Page: 3     Date Filed: 11/16/2012 Entry ID: 3975549

II. **A defendant has both the right to counsel and the right to represent himself. A defendant's waiver of counsel must be voluntary, and the court must advise the defendant of the pitfalls of self-representation. Miller continued to proceed pro se after two *Faretta* hearings. In closing argument, Miller referred to his limited understanding of the legal process. Was it error for the court to fail to *sua sponte* revisit *Faretta* based on Miller's legal inexperience?** . . . . . . . . . . . . . . . . . . . . . 17

     A.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
     B.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SUBMISSION AND VIRUS SCAN . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Appellate Case: 12-2821    Page: 4    Date Filed: 11/16/2012   Entry ID: 3975549

# TABLE OF AUTHORITIES

*Faretta v. California*, 422 U.S. 806 (1975) . . . . . . . . . . . . . . . . . . . . . . . . 18, 20-21

*United States v. Clay*, 618 F.3d 946 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Ferguson*, 793 F.2d 828 (8th Cir. 1986) . . . . . . . . . . . . . . . . . . . 14

*United States v. Hutzell*, 217 F.3d 966 (8th Cir. 2000) . . . . . . . . . . . . . . . . . . 15-16

*United States v. Johnson*, 610 F.3d 1138 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . 20

*United States v. Kiderlen*, 569 F.3d 358 (8th Cir. 2009) . . . . . . . . . . . . . . . . 18, 19

*United States v. Ladoucer*, 573 F.3d 628 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . 18

*United States v. McDowell*, 814 F.2d 245 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . 20

*United States v. Patient Trans. Serv., Inc.*, 413 F.3d 734 (8th Cir. 2005) . . . 12, 16

*United States v. Quevedo*, 654 F.3d 819 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . 12

*United States v. Reed*, 668 F.3d 978 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . . 19-20

*United States v. Tschacher*, 687 F.3d 923 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . 17

*United States v. Williams*, 690 F.3d 1056 (8th Cir. 2012) . . . . . . . . . . . . . . . . . . 11

Appellate Case: 12-2821   Page: 5   Date Filed: 11/16/2012 Entry ID: 3975549

# STATEMENT OF THE ISSUES

**I.** **In order to violate 18 U.S.C. § 287 a defendant must make a claim against the government knowing that the claim is false. After years of filing no tax returns, Miller filed five preposterous returns claiming millions of dollars in refunds. He intentionally substituted credit limits and deposits for interest income, and he fabricated amounts of tax withholding to maximize his refunds. Was the evidence sufficient to prove that Miller knew that his claims were false?**

    1.    *United States v. Patient Trans. Serv., Inc.*, 413 F.3d 734 (8th Cir. 2005)

    2.    *United States v. Clay*, 618 F.3d 946 (8th Cir. 2010)

    3.    *United States v. Hutzell*, 217 F.3d 966 (8th Cir. 2000)

    4.    *United States v. Ferguson*, 793 F.2d 828 (8th Cir. 1986)

**II.** **A defendant has both the right to counsel and the right to represent himself. A defendant's waiver of counsel must be voluntary, and the court must advise the defendant of the pitfalls of self-representation. Miller continued to proceed pro se after two *Faretta* hearings. In closing argument, Miller referred to his limited understanding of the legal process. Was it error for the court to fail to *sua sponte* revisit *Faretta* based on Miller's legal inexperience?**

    1.    *Faretta v. California*, 422 U.S. 806 (1975)

    2.    *United States v. Reed*, 668 F.3d 978 (8th Cir. 2012)

    3.    *United States v. Kiderlen*, 569 F.3d 358 (8th Cir. 2009)

Appellate Case: 12-2821    Page: 6    Date Filed: 11/16/2012 Entry ID: 3975549

## STATEMENT OF THE CASE

On November 15, 2011, a grand jury for the Southern District of Iowa

returned an indictment charging James Lavon Miller with four counts of making

false claims against the United States in violation of 18 U.S.C. § 287.  (CR 1.)[1]

Miller waived his right to a jury trial and was convicted of all four counts on

May 7, 2012.  (CR 12.)  He was sentenced to 33 months' imprisonment on

July 19, 2012.  (CR 23.)  Miller filed a pro se notice of appeal on July 29, 2012.

(CR 28.)

## STATEMENT OF FACTS

The defendant, James Lavon Miller, is a tax defier who, prior to being

convicted in this case, had not paid taxes for at least ten years.  (TT 22, 46, 58,

62-63.)  In 2008 and 2009 Miller filed frivolous tax returns for tax years 2005,

2006, 2007, and 2008.  (TT 11, 16-17, 20, 26, 30.)  In each return Miller listed

---

[1]In this brief, the following abbreviations will be used:
"CR" -- Clerk's Designated Record, followed by page number;
"TT" -- trial transcript, followed by page number;
"Tr. Ex." -- trial exhibit, followed by exhibit number and page number;
"ST" -- sentencing hearing transcript, followed by page number;
"1st FT" -- transcript from the Motion Hearing held on Feb. 6, 2012,
followed by page number;
"2d FT" -- transcript from the *Faretta* hearing held on March 30, 2012,
followed by page number;
"PSR" -- presentence report, followed by the paragraph number; and
"Br." -- Miller's opening brief followed by page number.

1

false amounts of interest income, federal withholding, and tax refunds. (TT 12-13, 17-18, 20, 24-25, 29.) Miller filed two separate returns for 2005. In the first return he claimed interest income of $161,100, nearly identical federal withholding of $161,099, and a corresponding refund of $130,851. (Tr. Ex. 1, pp. 4-5; TT 13.) In his second '05 return he claimed interest income of $1,132,522, federal withholding of $1,082,844, and a corresponding refund of $715,899. (Tr. Ex. 1-B, pp. 4-5; TT 18.) In his 2006 return Miller listed the same amounts of interest income and withholding as those listed in his first 2005 return, and he filed the two returns on the same day.[2] (Tr. Ex. 2, pp. 2-3; TT 19-20.) In his 2007 return Miller claimed interest income of $8,117,922, nearly identical federal withholding of $8,117,921, and a corresponding refund of $5,308,980. (Tr. Ex. 3, pp. 2-3; TT 25.) In his 2008 return Miller claimed interest income of $910,925, federal withholding of $865,378 and a corresponding refund of $580,427. (Tr. Ex. 4, pp. 2-3; TT 29.)

Miller used different methods to arrive at the fabricated interest income figures that he used in his different returns. In his first 2005 return and in his 2006 return Miller summed up his credit limits at various stores and banks to calculate

_____

[2]Because the standard deduction varies from year to year Miller's claimed refund in 2006 was slightly different than the refund he claimed in the first 2005 return despite the fact that the refunds in both returns were based on the same income and withholding figures. (TT 20.)

2

his interest income. (TT 53.) In his 2007 return Miller used the sum of his monthly deposits at Freedom Security Bank from 2001 to 2007 as his interest income. (TT 58-59.) In his 2008 return Miller listed the sum of his monthly bank deposits for 2008 as his interest income. (TT 60.) The IRS received no records of interest payments to, or federal withholding from, Miller for tax years 2005 and 2006. (TT 32-33.) The IRS also received no records of federal withholding from Miller for tax years 2007 or 2008. (TT 34.) In 2007 and 2008 the IRS did receive records reflecting minimal interest payments to Miller of less than $1000 each year from Maple Pork Company, but neither the company nor the interest payment were reflected in Miller's returns for those years. (TT 33-34.)

Miller had previously been held in civil contempt for failing to comply with an IRS summons for tax information in 2005. (TT 62-63.) Miller had also previously engaged in attempts to disrupt the IRS levying process by placing his assets in trusts and by filing liens against himself and his wife. (TT 62.) Miller also created and submitted worthless purported financial instruments entitled "Bonded Promissory Notes" to the IRS for $10 million (TT 60-61), $17,200, (TT 55) and $19,200 (TT 55). When interviewed about his returns and the fictitious financial documents Miller told the IRS agents that he wasn't sure if the

3

notes had any value but he submitted them "to see if they would work as payment" for his tax debt.  (TT 55-56.)

The weekend before his trial in this case, Miller told another inmate, Perrie Green, that he was guilty but was representing himself to look innocent. (TT 40-41.)  Miller also told Green that "the right perception can fool anyone," and stated that he would be perceived as innocent because he was older, well spoken, a Mennonite, and would have family and friends in support of him in the courtroom during his trial.  (TT 41.)

Miller proceeded pro se with stand-by counsel for virtually the entire case. He expressed his interest in proceeding pro se at his initial appearance.  (Minute Entry for Initial Appearance.)  Miller then filed a Pro Se status report stating that he would not be using the services of the public defender.  (Pro Se Status Report.) On February 6, 2012, during the first *Faretta* and competency hearing, Miller expressed his understanding of the disadvantages of proceeding without counsel and unequivocally expressed his desire to proceed pro se.  (1st FT 38-40.)  Despite his jargon filled "sovereign citizen" filings and addresses to the court, Miller also engaged the court directly and lucidly when he strayed from his script:

> THE COURT:  . . . well, I guess tell me a little bit about your farming operation because I don't know -- I only know what I'm guessing about it. But at one point we had a motion that said that you were receiving 3,000

4

new piglets.  So what do you do?  Do you finish them?  What's the right word?

THE WITNESS:  Yes, I receive them and finish them.

THE COURT:  So that means you feed them until it's time to sell them?

THE WITNESS:  Yes.

THE COURT:  And so how many hogs, total, do you have at any given time?

THE WITNESS:  3,000. . . .

THE COURT:  How long have you done that?

THE WITNESS:  Done what?

THE COURT:  Farming.

THE WITNESS:  Most of my life.

THE COURT:  Pretty much forever.  Okay.  And I'm assuming, but I need to ask you that you can read and write English; is that right?

THE WITNESS:  Yes.

THE COURT:  Okay.  So do you feel comfortable if you had a file, a written motion, or you had to read the rules of criminal procedure or anything else that you would need to do before you could go forward on a trial, that you would be able to do that?

THE WITNESS:  Yes.  I would try, yes.

. . .

THE COURT:  And again, I know that it's your goal to represent yourself, and it's my goal to help you do that the best way that you can.  Do you know

5

the jobs of other people here in the courtroom?  You know what the Judge's job is?

THE WITNESS:  Yes.

THE COURT:  And what do you think that is?

THE WITNESS:  You mean your role?

THE COURT:  Yes.

THE WITNESS:  As a judge?

THE COURT:  Yes.

THE WITNESS:  Impartial, fair, a referee.

. . .

THE COURT:  All right.  Can I ask you why you want to represent yourself?

THE WITNESS:  I guess because I believe it's in my best interest to do so.

THE COURT:  All right.  And even though I don't think it's in your best interest, and I can tell you that if I ever got charged with a crime in state court or federal court, I would get a lawyer.  And if I could get somebody from the Federal Public Defender's office, I would be thrilled because they do this all day every day, so they're very cognizant of the rules, the case law, the Sentencing Guidelines, and how this all works together.  So right now, we're offering you the best experienced package available in terms of representing somebody on a federal felony, and you're still wanting to go ahead and do this yourself; is that right?

THE WITNESS:  Yes, I do.

THE COURT:  All right.  Is this a voluntary decision?  Is there anything -- are you under any duress or has anyone made any threats or promises in order to get you to go ahead and represent yourself?

6

THE WITNESS:  No.

THE COURT:  No threats or promises, and yes, it is voluntary?

THE WITNESS:  Yes.

(1st FT 18-20; 38-39.)  Miller was found competent to stand trial based on a psychiatric evaluation and his responses to the court's questions (1st FT 31-32); he was found competent to represent himself (1st FT 31-32); and he was found to have knowingly and voluntarily waived his right to counsel (1st FT 40).

At the second *Faretta* hearing, held on March 30, 2012, Miller again unequivocally expressed his understanding of the pitfalls of self representation and nonetheless elected to continue to proceed pro se:

THE PROSECUTOR:  Thank you, Your Honor.  Mr. Miller, we covered this again with Judge Bremer at an earlier hearing, but are you also aware that you face a maximum of five years imprisonment on each of the four counts with which you are charged in the Indictment?

THE DEFENDANT:  I believe I heard you say that, yes.

THE PROSECUTOR:  And you understand that if you do represent yourself at trial, initially both you and I will have to -- or we will have the opportunity to perform voir dire in which we'll be able to ask the jurors questions or submit questions to the Judge to be asked of the jurors in an attempt to select a jury?

THE DEFENDANT:  If the jury trial is decided on.

THE PROSECUTOR:  But you are at least familiar with or aware that if we do have a jury trial in this case, there would be a voir dire process in which both you and I would have an opportunity to question the jurors –

7

THE DEFENDANT: Yes.

THE PROSECUTOR: – or submit questions to the Judge? And then as trial proceeded, we would both have an opportunity to give opening statements where we would address the jury with our expectations of what evidence the jury would be presented with during the trial?

THE DEFENDANT: If I so decide.

THE PROSECUTOR: Correct. And that then during the presentation of evidence, if you proceed pro se, it will be your responsibility to object to any evidence offered by the government that you find objectionable or that you think should not be admitted in the case?

THE DEFENDANT: Again, if I decide so.

THE PROSECUTOR: And then you understand that you will have an opportunity to present your own evidence and present a defense case if you decide to do so?

THE DEFENDANT: If I decide to do so, yes.

THE PROSECUTOR: And I believe Judge Bremer covered this, but you understand that it is not going to be the Court's role to assist you in these processes, that if you are proceeding pro se, it will be your responsibility and you will have to -- you will have to perform these duties if you choose to perform them, opening statement, direct examination of witnesses, cross-examination of witnesses, offer any exhibits, objecting to exhibits, making closing arguments, that all of those -- all of those aspects of a trial are regulated by the Federal Rules of Criminal Procedure and you will have to comply with those rules as you go through each step of trial. Do you understand that?

THE DEFENDANT: Yes.

THE PROSECUTOR: Mr. Miller, it is not my role to attempt to influence your decision on whether or not you want to proceed pro se, but are you at least aware that it was Judge Bremer's opinion that you will be at a

8

significant disadvantage at trial if you proceed pro se, not because of any limits of your competency or your cognitive abilities, not because of any question that anyone has about your intelligence or your ability to understand the case or your theory of defense, but merely because you have not had extensive experience litigating in Federal Court under the Federal Rules according to case law, the Rules of Criminal Procedure, the Rules of Evidence, that you will be at a disadvantage if you proceed pro se versus if you proceed with appointed counsel?

THE DEFENDANT: I am aware of that.

(2d FT 12-14.) Miller chose to continue to proceed pro se. (2d FT 19.) Stand-by counsel was present during both of the *Faretta* hearings. (1st FT 1; 2d FT 1.) Stand-by counsel was also present during Miller's trial and actively assisted Miller with his defense. (TT 1, 79-80.)

## SUMMARY OF THE ARGUMENT

Miller's tax returns themselves belie his claim that he did not know the figures listed in the returns were false. The figures are extreme and baseless. Miller intentionally provided false information in his returns in an attempt to offset his tax balance and to obtain a windfall by exploiting a purported tax loophole. Even if he believed that the exploitation was legal, he knew that the tax information included in his returns was false. Miller admitted that he substituted credit limits and bank deposits for interest income in his returns. And he used inconsistent methods to come up with his fabricated numbers. Miller also admitted

9

to a cell mate that he was guilty and admitted that he was attempting to deceive the court by proceeding to trial pro se.

Miller's claim that his waiver of counsel was not knowing and voluntary is similarly unsupported by the record. Miller waived his right to counsel after twice being advised of the danger in doing so. His desire to proceed pro se was consistent and unfaltering from his initial appearance through sentencing. Miller gave no indication that he was reconsidering his decision during trial and his self-serving statements during closing arguments did not cast doubt on the validity of his waiver.

Appellate Case: 12-2821    Page: 16    Date Filed: 11/16/2012 Entry ID: 3975549

# ARGUMENT

**I.** **In order to violate 18 U.S.C. § 287 a defendant must make a claim against the government knowing that the claim is false. After years of filing no tax returns, Miller filed five preposterous returns claiming millions of dollars in refunds. He intentionally substituted credit limits and deposits for interest income, and he fabricated amounts of tax withholding to maximize his refunds. Was the evidence sufficient to prove that Miller knew that his claims were false?**

### A.    *Standard of review*

The Court "reviews the sufficiency of the trial evidence *de novo*, in the light most favorable to the government." *United States v. Williams*, 690 F.3d 1056, 1066 (8th Cir. 2012) (citation omitted).

### B.    *Argument*

Miller argues that the government failed to establish that he knowingly made false claims. (Br. 13.) Miller contends that the trial evidence did not negate the possibility that he genuinely believed that "credits generated in his name" entitled him to the millions of dollars of tax refunds claimed in his returns. (Br. 14-15.) Miller's contention is contradicted by the record. He admitted that the interest income claimed in his returns was not interest income. He also used inconsistent methods to calculate his fabricated interest income figures, and he stipulated that the institutions listed in his returns would have no records of any interest payments to, or tax withholdings from, him. Further, Miller admitted that he was guilty and

11

that he was representing himself in an effort to fool the court. Miller knew that the tax information in his returns was false even if he genuinely believed that he was entitled to the money in accordance with his sovereign citizen ethos.

In order to prove a violation of 18 U.S.C. § 287 the government must prove that the defendant "ma[de] or present[ed] to any department or agency of the United States any claim . . . knowing such claim to be false, fictitious, or fraudulent." *United States v. Quevedo*, 654 F.3d 819, 822 (8th Cir. 2011) (internal quotations omitted). Miller is only challenging the sufficiency of the evidence as to the knowledge element of his crime. (Br. 10-14.) While the government must prove that Miller knew his claims were false, knowledge may be inferred and deliberate ignorance is no defense. *See United States v. Patient Transfer Service, Inc.*, 413 F.3d 734, 742 (8th Cir. 2005) (approving a deliberate ignorance instruction in a § 287 case and stating "[i]t could be inferred from the evidence that Wise had actual knowledge of what activity was reimbursable and how the claim forms should have been submitted or that he avoided learning more about proper billing.").

Miller's tax returns evidence his guilty mind. Miller's initial 2005 return and his 2006 return listed entities at which he had credit cards or lines of credit as the entities which paid him interest. (Tr. Ex. 1, p. 6; Tr. Ex. 2, p. 4.) In his initial

12

'05 and in his '06 returns Miller added up all of his credit limits at the various institutions and claimed that amount, $161,000, as interest income. (Tr. Ex. 1, p. 4; Tr. Ex. 2, p. 2.) Miller admitted that he used credit limits to come up with the interest income figure. (TT 53.) In his 2007 and 2008 returns Miller switched to using a different method; he added up bank deposits to calculate his interest income. In his 2007 return he claimed $8,117,922 in interest income. (TT 58; Tr. Ex. 3, pp. 2, 4.) In his 2008 return Miller claimed $910,925 in interest income. (TT 60; Tr. Ex. 4, p. 2.)

Miller's argument that he genuinely believed that his returns were accurate is undermined by his returns and his statements. If he believed that his credit limits at Menards, Kohl's, Younkers, J.C. Penney . . . etc. reflected interest income for 2005 and 2006, it is difficult to see how he could also have genuinely believed that the sum of his bank deposits over seven years constituted interest income for 2007 and that his bank deposits for one year constituted interest income for 2008. If Miller's belief was that any and all financial transactions generated redeemable credits in his name, then he would have claimed both his credit limits and his bank deposits as interest income in the same years. Miller might argue that his interpretation of the tax laws changed from October 14, 2008, when he filed the '07 return (Tr. Ex. 3, p. 5) to October 23, 2008, when he filed the '05 and '06

13

returns (Tr. Ex. 1, p. 7; Tr. Ex. 2, p. 5) and then reverted back by April 3, 2009, when he filed his 2008 return (Tr. Ex. 4, p. 6). But like Miller's returns, this argument is incredible. Miller's returns themselves, and his explanations for the figures therein, show that Miller knew that the claims in his returns could not have been true. *See United States v. Ferguson*, 793 F.2d 828, 831 (8th Cir. 1986) ("These forms on their faces demonstrate Ferguson's knowledge of the falsity of her claims. . . . [T]he "Eugene J. May" form reflects the filer's efforts to gain a refund through her groundless interpretation of the tax laws. . . . Because her characterization was patently false and utterly groundless, she violated 18 U.S.C. § 287.").

Miller's listed tax withholdings and his trial stipulation similarly indicate that he knew that he was filing false returns. Miller claimed one dollar less in tax withholding than the amount of interest income that he claimed in his 2005, 2006, and 2007 returns. (Tr. Ex. 1, p. 5; Tr. Ex. 2, p. 3; Tr. Ex. 3, p. 3.) In 2008 Miller claimed $865,378 of withholding, approximately $45,000 less than the $910,925 he claimed as interest income. (Tr. Ex. 4, p. 3.) Banks and other financial institutions are required to report to the IRS any tax withholdings that they withhold from payments to taxpayers. (TT 54.) The IRS had no records of any withholdings from Miller for 2005-2008. (TT 33-34.) Miller offered no

14

explanation for his claimed withholdings.  (TT 54-55, 61.)  Even if he believed that the interest income listed in his returns was generated by credits in his name, his theory does not explain his claimed withholding.  Miller stipulated at trial that the financial institutions that he listed as having paid him interest and as having withheld taxes from him would have no records of any such payments or withholdings.  (Trial Stipulation.)  If Miller knew that the entities did not pay him interest or withhold taxes from him then he knew the numbers in his returns were false.

Miller argues that he was operating under some "brainwashed" but sincerely held view of what the tax law permits.  (Br. 14.)  And perhaps Miller truly believed that he was entitled to redeem credits generated in his name by listing false, non-existent amounts of interest income and withholding in his tax returns.  But that belief does not diminish his knowledge that the figures in the returns were false.  It does not matter if Miller thought that it was legal to attempt to exploit a supposed tax loophole.  He knew that he was providing false information in an effort to obtain refunds of taxes that were never withheld from him.  Miller did not need to intend to break the law to be convicted; he simply needed to know that he was providing false information in his returns.  *See United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir. 2000) ("the general rule [is] that ignorance of the law is no

15

Appellate Case: 12-2821      Page: 21      Date Filed: 11/16/2012 Entry ID: 3975549

excuse."). At a minimum Miller realized that the tax information that he provided was questionable and he remained deliberately ignorant as to its accuracy. *See generally United States v. Clay*, 618 F.3d 946, 954 (8th Cir. 2010) ("If reasonable inferences support a finding the failure to investigate is equivalent to 'burying one's head in the sand,' the jury may consider willful blindness as a basis for knowledge.") (internal quotation omitted); *United States v. Patient Transfer Service, Inc.*, 413 F.3d 734, 742 (8th Cir. 2005.)

Miller's false claims were part of a long-standing pattern of tax defiance. The evidence of Miller's knowledge of the falsity of his tax claims is further supported by his past obstructionist behavior. He had previously been held in contempt for refusing to comply with an IRS summons (TT 62-63); he had previously failed to pay taxes (TT 22); Miller filed liens against himself and his wife and placed his assets in trusts to impede IRS efforts at levying (TT 62); and, Miller submitted fictitious "promissory notes" to the IRS (TT 61). This evidence buttresses the other evidence of Miller's knowledge and intent. In addition to all of this evidence, Miller also confessed to a cell mate. (TT 41.) Viewing the evidence in the light most favorable to the government, Miller's knowledge of the falsity of the figures listed in his returns was proven beyond a reasonable doubt.

Appellate Case: 12-2821   Page: 22   Date Filed: 11/16/2012 Entry ID: 3975549

**II.** **A defendant has both the right to counsel and the right to represent himself. A defendant's waiver of counsel must be voluntary, and the court must advise the defendant of the pitfalls of self-representation. Miller continued to proceed pro se after two *Faretta* hearings. In closing argument, Miller referred to his limited understanding of the legal process. Was it error for the court to fail to *sua sponte* revisit *Faretta* based on Miller's legal inexperience?**

### A. *Standard of review*

The Court reviews "de novo a district court's determination to permit a defendant to proceed pro se." *United States v. Tschacher*, 687 F.3d 923, 931 (8th Cir. 2012.)

### B. *Argument*

Miller argues that the district court erred by failing to revisit the *Faretta* inquiry based on his closing argument at trial. (Br. 18-19.) During closing Miller stated that he did not understand the legal process completely and he referred to an accountant who purportedly prepared his tax returns. (TT 78-79.) Miller was then offered the opportunity to reopen his case and testify about the accountant but he declined to do so. (TT 79.) Miller argues that this exchange shows his lack of understanding about the import of potentially critical evidence and required the court to revisit his decision to waive counsel. (Br. 17-18.) But Miller had repeatedly affirmed his desire to represent himself, and stand-by counsel was present at trial to advise him if he wanted or needed help. (TT 79-80.) Miller's

17

detrimental trial strategies or misapprehensions as to how best to present his defense have no bearing on the court's consideration of whether his waiver of counsel was valid. *See United States v. Ladoucer*, 573 F.3d 628, 634 (8th Cir. 2009) ("Thus, while it is clear that Ladoucer performed poorly in representing himself, his performance at trial has no bearing on our conclusion that his waiver of counsel was voluntary, intelligent and knowing.").

The Sixth Amendment provides a defendant both the right to counsel and the right to proceed pro se. *See Faretta v. California*, 422 U.S. 806, 821 (1975); *United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009). Before a defendant can waive his right to counsel he must be advised of the dangers and disadvantages of self-representation. *See Faretta*, 422 U.S. at 835. And a defendant's waiver of the right to counsel must be knowing and voluntary. *See Kiderlen*, 569 F.3d at 364. If a defendant insists on representing himself, however, that choice must be honored even if it is to his detriment. *See Faretta*, 422 U.S. at 834.

The requirements of *Faretta* and its progeny were satisfied with regard to Miller on multiple occasions. (1st FT 32-40; 2d FT 3-6, 9-14, 19.) Miller was advised of his right to counsel at the first *Faretta* hearing. (1st FT 33-34.) Miller was also advised that the Federal Rules of Criminal Procedure and the Federal Rules of Evidence would govern the trial. (1st FT 26-37; 2d FT 9-11.) Miller was

18

advised as to the maximum penalties that he faced.  (1st FT 9-10; 2d FT 12.)  He was informed about voir dire, opening statements, the government's presentation of evidence, his responsibility to object to contested evidence, his opportunity to present evidence, the examination of witnesses, and closing arguments.  (1st FT 317-39; 2d FT 12-14).  And Miller was advised of the disadvantages that he would face without counsel.  (1st FT 32-40; 2d FT 14.)

Miller affirmed that his decision to proceed pro se was voluntary.  (1st FT 38-39.)  He expressed his desire to represent himself repeatedly.  (Minute Entry for Initial Appearance; Pro Se Status Report; 1st FT 38; 2d FT 19.)  And Miller expressed no hesitancy in representing himself when given the opportunity to address the court immediately before trial began.  (TT 4.)  The record clearly shows that Miller understood the pitfalls of self-representation and voluntarily elected to proceed pro se nonetheless.  *See United States v. Kiderlen*, 569 F.3d 358, 364 (8th Cir. 2009) ("We will uphold a district court's grant of a defendant's motion to represent himself if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation.") (internal quotation omitted).

Miller's legal defense may have suffered due to his pro se status, but that is not a basis for questioning the validity of his waiver of counsel.  *See United States*

19

*v. Reed*, 668 F.3d 978, 986 (8th Cir. 2012) ("Davis made a knowing and voluntary waiver of his right to counsel after being repeatedly warned of the dangers and disadvantages of doing so. The court provided Davis standby counsel. . . . the district court properly allowed Davis . . . to exercise [his] constitutional right of self-representation."); *United States v. Johnson*, 610 F.3d 1138, 1140 (9th Cir. 2010) ("Under both *Faretta* and *Edwards*, they had the right to represent themselves and go down in flames if they wished, a right the district court was required to respect."); *United States v. McDowell*, 814 F.2d 245, 251 (6th Cir. 1987) ("McDowell's final argument is that the district court committed plain error in not declaring a mistrial *sua sponte* after it became apparent that he was not receiving a 'fair trial.' The only thing that was 'unfair' about McDowell's trial was that he did not represent himself very well . . . ."). Miller may have been unclear as to how best to proceed at trial, but this lack of clarity is unremarkable in a pro se defendant. Even if Miller could now show that there was important evidence that he failed to present (a prospect only supported by Miller's self-serving statement in closing argument) his trial failures did not require the court to revisit the *Faretta* inquiry. Miller's waiver of counsel was unambiguous: "he kn[e]w[] what he [was] doing and his choice [was] made with eyes open." *Faretta*,

20

422 U.S. at 835 (1975).  There was no requirement that the court revisit the *Faretta* inquiry based on Miller's legal inexperience; there was no error.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests Miller's convictions and sentences be affirmed.

Respectfully Submitted,

Nicholas A. Klinefeldt
United States Attorney

By:   */s/ John D. Keller*
John D. Keller
Assistant United States Attorney
U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel:  (563) 449-5432

Appellate Case: 12-2821     Page: 27     Date Filed: 11/16/2012 Entry ID: 3975549

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,075 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect X3 in Times New Roman font, 14 point.

Dated: November 15, 2012.

*/s/ John D. Keller*
John D. Keller
Assistant United States Attorney
U.S. Courthouse, Suite 310
131 East 4th Street
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433

Appellate Case: 12-2821    Page: 28    Date Filed: 11/16/2012 Entry ID: 3975549

## CERTIFICATE OF SUBMISSION AND VIRUS SCAN

I hereby certify that on this 15th day of November, 2012, I electronically submitted the APPELLEE BRIEF with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system after scanning it for viruses by using the Trend MicroOffice scan software program, which reported no viruses were found.  Paper copies will be transmitted upon receipt of the Notice of Filing from the Clerk of Court.

*/s/ Allison Schaley*
Allison Schaley, Legal Assistant

## CERTIFICATE OF SERVICE

I hereby certify that I did on this        day of November , 2012, mail two true and correct copies of the foregoing BRIEF OF APPELLEE by placing it in the U. S. mail, postage prepaid and addressed to the following:

John P. Messina
Attorney at Law
400 Locust St., Ste. 340
Des Moines, IA 50309

_____
Allison Schaley
Legal Assistant, U. S. Attorney's Office
U. S. Courthouse, Suite 310
131 East Fourth Street
Davenport, Iowa 52801
Tele:  (563) 449-5432
Fax:   (563) 449-5433

23